UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| KEVIN BEAM, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) | Case No. 3:18-cv-02018-SMY-GCS |
| WATCO COMPANIES, L.L.C., | ) |  |
| WATCO TRANSLOADING, LLC, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

On October 25, 2018, Plaintiff Kevin Beam brought suit against Defendant Watco Transloading, LLC ("Watco") to recover for personal injuries under the Jones Act. (Doc. 1). In his Second Amended Complaint, Plaintiff alleges general and gross negligence and unseaworthiness against Defendant. (Doc. 23). Plaintiff seeks general monetary damages, punitive damages, and maintenance and cure from Defendant. (Doc. 23).

Now before the Court is a motion filed by Defendant Watco to compel an independent medical examination ("IME") of Plaintiff**.** (Doc. 134). For the reasons outlined below, Defendant's motion to compel is **GRANTED.**

## FACTUAL BACKGROUND

At the time of the underlying incident, on November 12, 2017, Plaintiff worked as a deckhand and Jones Act seaman for Defendant. (Doc. 141, p. 2). Plaintiff was assigned to work on Defendant's tugboat; when the incident occurred, Plaintiff was helping to load coal into barges at Defendant's terminal on the Mississippi River. (Doc. 141, p. 2). While

Plaintiff was working on the barge, a heavy steel cable snapped and struck Plaintiff in the back. *Id*. Plaintiff's injuries included a broken vertebra in Plaintiff's back and severe injuries to his neck, shoulder and wrist. *Id*. Plaintiff was diagnosed with only a fractured rib after the November 17, 2017 incident. (Doc. 134, p. 2). However, Plaintiff has undergone extensive medical treatment for injuries he claims are related to the incident.

Since the incident, Plaintiff has undergone the following treatment for his injuries: (i) a thoracic kyphoplasty for a compression fracture at the T7 vertebrae on March 15, 2018; (ii) a May 18, 2018 arthroscopic rotator cuff repair, arthroscopic flap repair, Mumford type distal clavicle resection, subacromial decompress, and biceps tenotomy; (iii) a median branch block at the T7-T8 vertebrae in March 2019; (iv) a September 28, 2019 Medial Branch Ablation and rhizotomy at the T7-T8 vertebrae; (v) a two level neck fusion surgery on March 16, 2020; and (vi) a kyphoplasty at the T7 vertebrae and a fusion at the T11-12 vertebrae on February 20, 2021. (Doc. 141, p. 2). Plaintiff's primary and organizing physician, Dr. Victoria Do, initially testified that Plaintiff had no future surgeries planned as of October 29, 2020 and that Plaintiff's pain was consistently mild. (Doc. 134, Exh. D, 80:22-82:24). Defendant's expert witness, Dr. John Mattingly, estimated that Plaintiff's February 20, 2021 kyphoplasty was necessary not because of his injuries on November 17, 2017, but because of an underlying degenerative condition, such as osteoporosis or osteopenia. *Id*. at Exh. G. Plaintiff's treating radiologist, Dr. Amesur Sandeep, also estimated that Plaintiff suffered from osteoporosis or osteopenia. (Doc. 134). Dr. Sandeep recommended Plaintiff undergo a DEXA bone scan for further diagnosis. *Id*.

## LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, parties may obtain discovery into any non-privileged matter relevant to a party's claim or defense so long as that discovery is proportional to the needs of the case. *See Pegues v. Coe*, No. 3:16-CV-00239-SMY-RJD, 2017 WL 4922198, at *1 (S.D. Ill. Oct. 31, 2017)(citing FED. R. CIV. PROC. 26(1)). The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. *See* FED. R. CIV. PROC. 26 advisory committee note to 1980 amendment. Accordingly, the relevancy requirement is broadly construed to include matters "that bear on, or that could reasonably lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal citation omitted); *see also*, FED. R. CIV. PROC. advisory committee note to 1946 amendment. Nevertheless, the relevancy requirement should be firmly applied, and a district court should not neglect its power to restrict discovery when necessary. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 320 (7th Cir. 2003); *Stephenson v. Florilli Transportation, LLC*, No. 3:18-cv-0103-NJR-DGW, 2018 WL 4699863, at *1 (S.D. Ill. Oct. 1, 2018).

A court may order a party whose physical condition is "in controversy" to submit to a physical examination by a licensed or certified examiner. FED. R. CIV. PROC. 35(a)(1). A party moving for an IME must show good cause in order to succeed. *See* FED. R. CIV. PROC. 35(a)(2)(A). The Court determines on a case-by-case basis whether the moving party has adequately demonstrated both the "in controversy" and "good cause" requirements of the rule. *See Schlagenhauf v. Holder*, 379 U.S. 104, 118-119 (1964). The "in

controversy" prong requires that the examination pertain to a condition at issue in the litigation. *See Equal Employment Opportunity Comm'n v. Costco Wholesale Corp.*, 14-C-6553, 2015 WL 9200560, at *13 (N.D. Ill. Dec. 15, 2015). In order to show good cause, the moving party must demonstrate a greater amount of need than is required under the discovery rules; the movant's ability to obtain the desired information by other needs is a central consideration in determining good cause. *See Schlagenhauf*, 379 U.S. at 118. Together, these dual standards require that the moving party provide an affirmative showing that each condition as to which the examination is sought "is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Equal Employment Opportunity Comm'n*, 2015 WL 9200560, at *13. A demonstration of mere relevance is insufficient to meet this burden. *See Watson v. Dodd*, 3-16-cv-01217-NJR-DGW, 2018 WL 3569883, at *2 (S.D. Ill. July 25, 2018).

## ANALYSIS

Though Plaintiff claims that his current medical treatment is required to care for his injuries after the incident on November 17, 2017, Defendant contends that Plaintiff's later injuries are instead caused by an underlying degenerative condition. (Doc. 134, p. 2-3). Defendant argues that although both Dr. Mattingly and Dr. Sandeep have testified that Plaintiff suffers from osteoporosis or osteopenia, a DEXA bone scan would provide "more incontrovertible evidence" as to whether Plaintiff has either of those conditions. *Id*. at p. 3. If Plaintiff suffers from either osteoporosis or osteopenia, Defendant intends to rebut Plaintiff's experts' opinions that his recent spine treatments stem from the injuries Plaintiff suffered as a result of the incident in this case. *Id*. Instead, Defendant alleges,

Plaintiff's more recent medical treatments were caused by the underlying condition, and Defendant's damages should be reduced accordingly. *Id*.

In response, Plaintiff claims that Defendant has neither shown that Plaintiff's bone density is in controversy nor demonstrated good cause for the IME. *See* (Doc. 141, p. 4, 5). Plaintiff notes that he has not alleged injuries directly associated with bone density loss. *Id*. at p. 4. Moreover, Plaintiff has not argued that his injuries were exacerbated due to a previous bone density loss condition or that he suffers bone density loss due to the injuries at issue. *Id*. at p. 4-5.

While Defendant must demonstrate that Plaintiff's bone density is genuinely "in controversy," it may do so by showing that Plaintiff's potential underlying condition may affect the extent of the damages claimed by Plaintiff. As the plaintiff has put his physical condition into controversy by asserting that he suffered an injury at the defendant's hands, it is "only fair to provide that "he may not be permitted to recover his judgment unless he permits an inquiry into the true nature of his condition." *See Schlagenhauf*, 379 U.S. at 126 (Douglas, J., dissenting in part). For example, in *Haymer v. Countrywide Bank, FSB*, No. 10 C 5910, 2013 WL 657662, *3 (N.D. Ill. Feb. 22, 2013), the defendant moved for an IME of the plaintiff's mental health because the plaintiff alleged damages for emotional distress in her complaint. However, the plaintiff argued that her mental health was not at issue as she claimed damages only for humiliation, embarrassment, and other, similar emotions. *Id*. at *4. And, according to the plaintiff, these emotional injuries were not predicated on an injury to the plaintiff's mental health. *Id*. (citing *Flowers v. Owens*, 274 F.R.D. 218, 220 (N.D. Ill. 2011)). Nevertheless, because the plaintiff complained of

resulting symptoms, including sleeplessness, nervousness, and depression, she placed her mental health in controversy. *Id*. (internal citations omitted). Because the plaintiff requested damages from the defendant for her emotional distress, an examination of her mental health was warranted, even though her mental health was somewhat removed from the injuries she alleged in her complaint. *Id*. Here, Plaintiff requests damages for treatments which exceeded his initial diagnosis and the estimation of required treatments for the alleged injury, such as spinal surgeries which took place in February 2021. (Doc. 134, p. 2). Plaintiff has thus put the causation for those injuries in controversy, and it is only fair to permit Defendant to conduct an inquiry into the true nature of the condition, which purportedly warrants the continued treatments at issue.

Plaintiff also argues that Defendant has failed to demonstrate good cause for the IME. Specifically, Plaintiff notes that Defendant already admitted to liability for Plaintiff's injuries. (Doc. 141, p. 5). Moreover, Plaintiff asserts that bones are in a "constant state of renewal;" accordingly, a DEXA bone scan cannot show the state of Plaintiff's bones at the time of injury. *Id*. Plaintiff points out that the Seventh Circuit recognizes the "Eggshell Skull Rule;" if a tortfeasor injures a defendant with an "eggshell skull," that tortfeasor is still liable for all of the resulting damages to the victim, even though the victim had an unusual and exacerbating injury at the time of the tort. *Id*. at p. 6. *See also Richman v. Sheahan*, 512 F.3d 876, 884 (7th Cir. 2008)(noting that "[t]he tortfeasor takes his victim as he finds him."). Because a DEXA bone scan cannot show Plaintiff's bone density at the time of the incident, and because Defendant would be liable for the resulting injuries even

if Plaintiff's bones were particularly brittle at that time, Plaintiff contends that a DEXA bone scan is not relevant to causation. (Doc. 141, p. 6-7).

Under the Eggshell Skull Rule, if a defendant's actions were the precipitating cause of the alleged injury, and that injury was a natural consequence of the actions, then that defendant is liable for the full extent of the injury, even if the plaintiff's physical condition may have aggravated that injury. *See Thomas v. Ford motor Company*, Case No. 17-C-888, 2019 WL 1293605, *1 (E.D. Wis. Mar. 21, 2019) (internal quotations and quotations marks omitted). For instance, if a tortfeasor kicks a victim, but does not know that the victim has a serious infection in the location of the kick, that tortfeasor is fully liable for the victim's injuries even if the victim is ultimately injured because the kick exacerbated the underlying infection. *See Richman*, 512 F.3d at 884. If such a rule did not exist, "victims as a class would be systematically undercompensated and tortfeasors as a class [] systematically underdeterred, because victims with above-average injuries would get their damages cut down while victims with below-average injuries would not get an offsetting increase." *Lancaster v. Norfolk and Western Ry. Co.*, 773 F.2d 807, 822 (7th Cir. 1985).

However, the Eggshell Skull Rule contains an exception. If a tort victim is ultimately injured by a preexisting condition which the tortfeasor merely aggravated, the tortfeasor is only liable to the extent of that aggravation. *See Willis v. BNSF Ry. Co.*, Case No. 11-1208, 2013 WL 5471889, *2 (C.D. Ill. Oct. 2, 2013) (internal citations omitted). In such a case, the court should reduce the damages awarded to the plaintiff to reflect the likelihood that a non-liable cause would have injured the plaintiff regardless of the

defendant's actions. *See Lancaster*, 773 F.2d at 822-823; *see also Stoleson v. United States*, 708 F.2d 1217, 1223-24 (7th Cir. 1983); *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963, 973 (7th Cir. 1983). This exception is particularly pertinent when a defendant's actions accelerate a plaintiff's progressive disease, as a plaintiff can only recover "for that part of [the] suffering" that was "activated, aggravated, or accelerated[]" as a proximate result of the defendant's actions. *Reising v. Untied States*, 60 F.3d 1241, 1244 (7th Cir. 1995) (internal citations omitted).

However, a court must carefully differentiate between an Eggshell Skull plaintiff, and those who would have been injured regardless of a defendant's actions. For example, if a plaintiff has a coronary condition which makes him more likely to suffer a heart attack, and the defendant's actions cause him to suffer a heart attack, that defendant is liable for the full extent of the damages caused to the "Eggshell Heart" plaintiff, even though a plaintiff without that condition would not have suffered a heart attack. *See Willis*, 2013 WL 5471889, at *2. In contrast, if a plaintiff has a deteriorating shoulder condition which would certainly result in the loss of use of that shoulder, and the defendant's actions cause pain and loss of use in that shoulder, the defendant is only liable for the pain and acceleration of the condition. *Id*. The defendant is not liable for the underlying condition itself. *Id*. The difference between the two scenarios is one of degree. In the heart attack example, the plaintiff is likely, but not certainly, going to experience a heart attack without the defendant's actions. However, in the shoulder condition example, the plaintiff would suffer the same injury regardless of whether the defendant

acted. The only difference the defendant's actions made was that the plaintiff suffered those injuries sooner than he would have otherwise.

If Plaintiff currently suffers from osteoporosis or osteopenia, these underlying conditions may be the actual cause of his on-going treatment for his spinal injuries, even if he did not suffer from either condition at the time of the incident in question. A lack of bone density could contribute to whether Plaintiff would eventually suffer from the same conditions for which he is now currently undergoing required treatment. Equally, though Defendant admitted liability for the initial injury to Plaintiff on November 17, 2017, it did not admit that it was liable for the full amount of damages Plaintiff requests. A DEXA bone scan could therefore uncover information which could be relevant to the causation of Plaintiff's injuries and the extent of Defendant's liability to the Plaintiff.

Plaintiff's final argument against the IME is that Plaintiff has already afforded Defendant ample discovery concerning the cause of his ongoing injuries. (Doc. 141, p. 7-8). According to Plaintiff, Dr. Do explained that she will continue to monitor Plaintiff's treatment, indicating that further treatment was likely necessary for his injuries. *Id*. at p. 9. Furthermore, Dr. Sandeep merely noted that osteopenia or osteoporosis requires consideration in properly diagnosing Plaintiff; he did not indicate that Plaintiff has either condition. *Id*. at p. 10. Plaintiff asserts that neither doctor's testimony establishes good cause for an IME, particularly when Defendant has had access to Plaintiff's medical records and a prior IME was conducted by one of Defendant's expert witnesses. *Id*.

When considering whether a moving party has demonstrated good cause for an IME, the Court should evaluate the extent to which that party might obtain the same

information from other sources. *See Schlagenhauf*, 379 U.S at 118. Though Defendant has access to Plaintiff's medical records, those records do not contain an answer as to whether Plaintiff has either osteoporosis or osteopenia. If they did, Dr. Sandeep would have no need to note that either condition required consideration as an underlying factor in Plaintiff's treatment, because that information would already be available to him as one of Plaintiff's treating doctors. Additionally, Defendant notes that a DEXA bone scan is the "gold standard" for diagnosis of osteoporosis or osteopenia. (Doc. 134, p. 3). As this test could provide an incontrovertible answer to the question of whether Plaintiff currently suffers from either condition, and because that answer is not otherwise available in the provided discovery, the Court finds that Defendant has demonstrated good cause for the requested IME. Defendant has successfully shown that Plaintiff's bone density is in controversy and that Defendant has good cause to conduct a DEXA bone scan. Accordingly, Defendant's motion to compel an independent medical examination is granted.

## Conclusion

For the above-stated reasons, Defendant Watco's motion to compel (Doc. 134) is **GRANTED.**

**IT IS SO ORDERED.**

**Dated: June 21, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.06.21 16:27:02 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**